Foster *v.* Mackay.

### George W. Foster *vs.* Tristram B. Mackay.

It is not a universal and inflexible rule, that a plaintiff must himself make oath to the loss of a paper of which he is presumed to have the custody, and of diligent search for it, before he can introduce secondary evidence of its contents.

A. accepted a draft drawn on him by two partners, and they procured from a bank a discount of the acceptance, by presenting a copy thereof, which the officers of the bank supposed to be the original : The partners soon after failed, and assigned to the bank all their dues, demands, &c., and delivered to the bank a trunk of papers ; but the acceptance was not among them : One of the partners was soon after committed to the state prison, where he died unmarried in about three years, leaving no papers there ; and no administration was taken on his estate : The other partner, soon after the failure of the firm, absconded, leaving his wife, and went to New York, where he resided three or four years, and then went to parts unknown, and was never again heard of : In about five years and a half after the acceptance was payable, the bank commenced an action against A., in the name of the surviving partner, to recover the amount of the acceptance ; and, in order to introduce secondary evidence of the contents thereof, first gave evidence that inquiry had been made of the near relations of the partners, who said that the original was not and never had been in their possession ; that it was not among the papers of the firm which were left by the surviving partner with his wife and with his attorney ; but that there was, among the papers so left, the account of sales, signed by A., for the balance of which the acceptance was given, as was noted on the margin of said account. *Held*, that this evidence was sufficient to warrant the introduction of secondary evidence of the acceptance.

Exceptions lie to the rejection of secondary evidence, after the introduction of preliminary evidence sufficient to warrant its admission.

Assumpsit, by the surviving partner of the firm of M. B. & G. W. Foster, on an alleged acceptance by the defendant of a draft drawn on him, by said firm, for the sum of $807·93, dated March 12th 1835, and payable to their own order in six months. The action was brought for the benefit of the Mechanics Bank, at Concord, New Hampshire, claiming the amount of the draft, under an assignment thereof by the drawers.

At the trial in the court of common pleas, the draft was not produced ; but it was proved or admitted, that the defendant

Foster *v.* Mackay.

had given such an acceptance as was set forth in the plaintiff's declaration; and that it had never been presented to him for payment.

It also appeared that said firm failed in the spring of 1835, and that, about a month before their failure, they presented to said bank, for discount, a paper purporting to be said acceptance which was only a true copy of it; and that the bank discounted it, as and for a genuine acceptance. It did not appear whether the Fosters expressly asserted it to be genuine, at that time.

At the time of the failure of said firm, M. B. Foster, in the name of both, assigned to the president, directors, and company of said bank, " all and singular the debts, dues, demands, book accounts and notes due and to become due to said firm, ' and appointed said president, &c. " in their name to ask, demand, sue for and recover, receive, acquit, release and discharge, any of said debts, dues, demands, claims or sums of money hereby assigned ; or to prosecute, recover, release and discharge the same, in the name of said firm, to and for the use and benefit of said president, directors," &c. Soon after this assignment, G. W. Foster delivered to said bank a trunk containing papers, which he said were all the papers belonging to the firm, except some in the possession of M. B. Foster; and the bank took from said trunk all the papers that appeared to be of any value.

It appeared that the bank presented the said copy to the defendant at the maturity of the draft, and that he refused to pay, denying its genuineness, but offering to pay the genuine one whenever it should be presented : That both the Fosters, when informed that the defendant denied that the paper was genuine, repeatedly declared to the cashier of the bank that it was the genuine one ; and that M. B. Foster declared, that if it was not the genuine one, a copy had been presented for discount by mistake merely, and that the original must have been destroyed ; and that he, and not G. W. Foster, had had the custody of the papers of the firm : That the bank did nothing more respecting the acceptance, except to make inquiries (how often, or when, did not appear) for the original, until the autumn of 1841, when said copy was sent to Boston, and this suit commenced.

It was shown that M. B. Foster was committed to the Massachusetts state prison on the 19th of September 1835, for the term of four years, for forgery, and died in said prison on the 5th of August 1838, leaving no papers there ; that he was not married, and that no administration was taken on his estate : That G. W. Foster (who was a brother of said M. B. Foster) absconded in the year 1835, and went to New York, where he resided four years, and then left that place ; and that nothing further could be found or heard of him, except that his relations said they supposed he had gone to Texas. It did not appear at what time the bank first knew of his residence in New York. But it appeared that his relations were a mother and two brothers, who resided in New York, a wife, who resided in Boscawen, (N. H.) an aunt and two cousins, in Canterbury, (N. H.) two uncles, an aunt and several cousins, in Sanbornton, (N. H.) and an aunt and second cousin, in Concord, where said bank is situated : That said second cousin had some papers of said Fosters in his possession, and said he supposed he had all, except some in the hands of A. K. Foster, one of their brothers in New York : That the wife of G. W. Foster had in her possession a large quantity of papers relating to the business of said firm, from its commencement to its close, and among them the account of sales, signed by Mackay, the defendant, for the balance of which said acceptance was given, as is noted on the margin of said account, and dated March 20th 1835 : That these papers were given to her by her husband, on his leaving the country, and that he told her they were all the papers of the firm, and directed her not to deliver them to any one but by the orders of his attorney, C. Minot, Esq. of Haverhill : That M. B. Foster previously delivered to her husband all the papers in his possession, and that she supposed she had all the papers, except those in the hands of said second cousin, said Minot, and the bank. And it appeared that said acceptance was not among any of these papers.

It further appeared that the aforesaid A. K. Foster of New York, on being inquired of by an agent of the bank, in September 1842, whether he had in his possession such a draft as that in question, said that neither he, nor his mother, nor his broth·

45 *

Foster *v.* Mackay.

er, who all lived in the same house, had any papers of said firm or of either partner. And nothing appeared, except as above, indicating that any of said other relations had or had not any papers of the firm in their possession.

The plaintiff, after introducing testimony to the foregoing facts, moved for leave to introduce secondary evidence of the acceptance ; which motion the presiding judge refused to grant. A verdict was thereupon taken for the defendant, and exceptions were alleged by the plaintiff.

*Bartlett & G. Minot,* for the plaintiff. The reason of the rule, which requires an original paper to be produced, is, that its non-production raises a presumption that it would not support the claim or the defendant's defence. Greenl. on Ev. § 82. The removal of this presumption renders the rule inapplicable. Generally the oath of the party to the suit, who relies on the paper, that it is lost, and that diligent search has been made for it, seems to have been required. But this is not an inflexible rule. The present case differs from all preceding ones of a like nature; the suit being necessarily brought by an assignee, in the name of an assignor who has absconded and left the country. Proof has been made that the acceptance once existed ; no proof of its transfer has been offered ; and the presumption, from lapse of time and the absence of all other claims, is, that no other claimant exists. Story on Bills, § 201. All the proper sources of inquiry have been resorted to, without success, and every thing is shown which is required as prerequisite to the admission of secondary evidence, except the affidavit of the nominal plaintiff, which it is impossible to procure. Under these circumstances, the evidence which was rejected ought to have been admitted. Greenl. on Ev. § 558. *Davis* v. *Spooner,* 3 Pick. 287. *Taunton Bank* v. *Richardson,* 5 Pick. 441. *Parkins* v. *Cobbet,* 1 Car. & P 283. *Minor* v. *Tillotson,* 7 Pet. 99. *Page* v. *Page,* 15 Pick 368. *Kensington* v. *Inglis,* 8 East, 273. *M'Gahey* v. *Alston,* and *Minshall* v. *Lloyd,* 2 Mees. & Welsb. 206, 450. *Rex* v. *Inhabitants of Stourbridge,* 8 Barn. & Cres. 96.

It was necessary that inquiry should be made of M. B. Foster ; and what he said was admissible, as part of the *res gestæ. The King* v. *Inhabitants of Morton,* 4 M. & S. 48.

Foster *v.* Mackay.

In the following cases, secondary evidence was admitted with out the affidavit of the party to the record : *Poignard* v. *Smith,* 8 Pick. 272. *Meyer* v. *Barker,* 6 Binn. 228. *Jackson* v. *Neely,* 10 Johns. 374. *Doe* v. *Winn,* 5 Pet. 233. *Brewster* v. *Sewell,* 3 Barn. & Ald. 296.

The question before the court of common pleas was one of law on the evidence adduced, and not a matter of discretion in the judge. It was a proper case, therefore, for alleging exceptions.

*Fletcher & Sewall,* for the defendant. The bank stands on the same ground as the assignors, and must prove the claim in the same manner as if G. W. Foster were the party in interest. He was the proper party to have possession of the acceptance, and his affidavit of loss and search is the best and only admissible evidence thereof. *De Haven* v. *Henderson,* 1 Dall. 424. 3 Phil. Ev. (4th Amer. ed.) 1218, 1232, and cases there collected. In *Blanton* v. *Miller,* 1 Hayw. 4, it was ruled that " where the party hath lost his deed, or is out of possession thereof, he himself, and no other person for him, must make oath of the loss, before he shall be permitted to read a copy ; and so the plaintiff was called, though it was urged to the court that he was in a foreign country."

But if other evidence of the loss and search were admissible, that which was offered was not sufficient to let in secondary proof of the acceptance. See 5 Pick. 442, 443. 1 Phil. Ev. (4th Amer. ed.) 456. 3 ib. *ubi sup.* *Wilcox* v. *Ray,* 1 Hayw. 410. *Blade* v. *Noland,* 12 Wend. 173. Much of that evidence was mere hearsay, and not to be regarded. It does not appear that the Fosters, or one of them, had not the possession of the paper ; nor that it was not transferred by them before the copy was discounted, so that nothing passed by the assignment ; nor that their mother, and one of their brothers, were ever inquired of as to the paper.

The case is not open to this court, on exceptions. The question in the court of common pleas was not one of law, but of the sufficiency of the evidence.

HUBBARD, J The draft not being produced on the trial, the

question is, whether the evidence, that was offered to show a *bonâ fide* and diligent search for it, is sufficient to authorize the admission of secondary evidence to sustain the action. That the search has been *bonâ fide* cannot well be called in question; because it has been made by the bank who allege a lawful claim and title to it, and the party liable to pay is agreed to be of ample property. What then is the evidence of a diligent search? The draft bore date March 12th 1835. It was drawn by M. B. & G. W. Foster, who were then copartners, was payable to their own order, and was accepted by the defendant. We may well infer, therefore, that it was once in the possession of the drawers. Before the draft fell due, a paper purporting to be the acceptance was offered to the bank for discount, which was in fact only a copy of it ; but the discount was made for the account of the Fosters.

The history of the drawers is short. They appear to have failed in business in the spring of 1835, and shortly after the discount was obtained. In September 1835, M. B. Foster was committed to the state prison for forgery, where he remained till his death, which took place in August 1838. During the year 1835, G. W. Foster absconded and went to New York, and lived there three or four years ; after which nothing further is known of him. M. B. Foster died unmarried ; there has been no administration on his estate ; and he left no papers in the state prison. Shortly after the failure of the firm, G. W. Foster delivered a trunk of papers to the bank, which he said contained all the papers belonging to the firm, except some that were in the possession of M. B. Foster. Inquiry for papers was made of the relatives, and, among them, of the wife of G. W. Foster. She gave up what papers she had, which she said her husband gave her on leaving the country, saying they were all his papers. Among these was the account of sales signed by the defendant Mackay, for the balance of which the acceptance was given.

On the review of the endeavors of the party in interest to procure the original acceptance, or to ascertain what became of it, we think reasonable diligence has been shown, and that the inquiries have been pressed in the proper quarters. The sources of

inquiry appear to be exhausted. The existence of the paper, at a former period, was proved or admitted. There was no evidence of its indorsement or delivery to any other person; and there has been a lapse of eight years without any claim by third persons for payment. Greenl. on Ev. § 558.

It is said, however, that the affidavit of the plaintiff is not produced ; and it is argued that it is an inflexible rule that the plaintiff's affidavit must be offered in the case. But we are of opinion, that while it is a general rule that the affidavit of the plaintiff must be produced, where a paper is alleged to be lost, of which he must be presumed to be in custody, before secondary evidence of its contents can be admitted, yet that the rule is not inflexible. And in a case like the present, where the nominal party to the record is not the party actually seeking to recover ; and the party interested has used due diligence to find the plaintiff, and produces proof that he has absconded, and has gone from the Commonwealth, and to parts unknown, we are of opinion that the party in interest has done, in this respect, all that can be reasonably required of him, and that the production of the affidavit of the absent party to the record may be dispensed with.

It is suggested that the party to the record designedly destroyed the acceptance, and therefore the secondary evidence cannot be admitted ; but there is no proof to sustain the suggestion. It rests in suspicion ; and if there were grounds for such belief, still, unless done before the bank acquired their title, whether under the assignment or by the discount of the copy of the draft, the destruction of it would not be sufficient to exclude the evidence.

It is also argued that exceptions, in a case like the present, will not lie to the ruling of the judge ; that it was merely a question as to the sufficiency of the evidence, and not a question of law for the consideration of the court. But we are of opinion that the admission or rejection of evidence does not rest in the mere discretion of the judge who tries the case, but upon rules and principles of law, framed and adapted to promote justice between parties in difference ; and that where a judge errs in the

admission of testimony not admissible by the rules of law, or re-jects testimony which ought to have been admitted, such error is ground of exception, though he himself, and not the jury, may be called upon in the first instance to weigh the evidence.   The judge is to consider the preliminary evidence, and he is of course to decide whether it is credible or not ; and his decision as to its credibility, like that of a jury, is conclusive.   But in his decision as to its admission, he must be governed by the rules of law. If it were not so, it would be difficult to see how questions of a character similar to the present could have been presented for adjudication, and upon which legal rules have been framed.

Upon a view of all the facts, we are of opinion that the learned judge erred in rejecting the secondary evidence, and the exceptions are sustained.   The verdict is set aside, and a trial is to be had at the bar of this court.